# 2003 DTA 111

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL I DE SAN JUAN
### PANEL II

JOSEPH A. UNANUE CASALS
Peticionario

*EX PARTE*

Núms. Cons. KLAN-2003-00574 / KLCE-2003-00585

San Juan, Puerto Rico, a 30 de junio de 2003

Panel compuesto por su Presidenta, la Juez Rodríguez de Oronoz,
y las Juezas Peñagarícano Soler y Bajandas Vélez

Peñagarícano Soler, Jueza Ponente

### TEXTO COMPLETO DE LA SENTENCIA

Comparecen ante nos, el Sr. Joseph A. Unanue Casal (en adelante, albacea), la Sra. Isabel M. Banuchi (en adelante, la Interventora); y el Lic. Roberto Corretjer Piquer, Defensor Judicial de las menores de edad Isabel, Sofía y Juliana Unanue Banuchi (en adelante, defensor judicial). Nos solicitan revisemos la Resolución emitida

el 27 de marzo de 2003 por el Tribunal de Primera Instancia en la acción civil núm. K JV1999-0071 (604). Mediante la misma, se ordenó el archivo del caso de autos. La aludida Resolución fue notificada el 2 de abril de 2003.

Examinados en su totalidad los autos del caso, así como el derecho aplicable, resolvemos revocar la Resolución recurrida dictada por el foro de instancia.

I

En el caso de marras, el tracto procesal resulta determinante para poder plasmar el intrincado proceso al cual han estado sometidas las partes envueltas. Veamos pues.

El 28 de noviembre de 1998, falleció en el estado de Washington, el Sr. Joseph F. Unanue. Este otorgó un testamento el 2 de septiembre de 1998 por el cual declaró herederas únicas y universales a sus hijas Isabel, Sofía y Juliana. Además, dispuso que su padre, el Sr. Joseph A. Unanue Casal, fuera su albacea. El 21 de enero de 1999, el albacea presentó ante el Tribunal de Primera Instancia una *Petición de Expedición de Cartas Testamentarias,* conforme al artículo 597 del Código de Enjuiciamiento Civil. ██ El 11 de febrero de 1999, se expidieron las Cartas Testamentarias conforme lo solicitado. ██ Por otro lado, con fecha de 4 de junio de 1999, se presentó por el albacea una *Demanda de Cumplimiento Específico de Contrato* en contra de la Interventora. ██ A este caso se le designó K AC1999-0779.

Así las cosas, los procedimientos en el caso de cartas testamentarias continuaron su curso. El 8 de noviembre de 1999, el albacea presentó una *Réplica a Moción en Solicitud de Orden,* que presentara la Interventora. El 8 de diciembre de 1999 se celebró una vista en la sala 508 del Tribunal de Primera Instancia, en la cual, entre otras cosas, se nombró en corte abierta al Lic. Suro Ballester como defensor judicial de las menores Unanue Banuchi. ██ El 17 de febrero de 2000, el albacea presentó una *Moción en Cumplimiento de Orden.* Por la misma, solicitó prórroga por un año al cargo de albacea. ██ El 8 de marzo de 2000, el Tribunal a quo concedió la prórroga de albaceazgo solicitada.

Así las cosas, el 18 de octubre de 2000, el Tribunal de Primera Instancia, por voz de la Hon. Juez Irizarry Pardo, emitió una Resolución por la cual, de conformidad con la Regla 63.1 (e) de Procedimiento Civil, se inhibió de atender el caso de cumplimiento de contrato que había presentado el albacea (KAC-1999-0779). Ordenó, además, el traslado del referido caso a la atención de la Juez coordinadora de lo civil para la disposición del mismo. ██

En tanto, en el caso referente a las Cartas Testamentarias, el albacea y la Interventora presentaron una moción en conjunto, por la que solicitaron la aprobación de un nuevo defensor judicial para las menores. El 14 de noviembre de 2000, se llevó acabo una vista ante el Hon. Juez Carrasquillo Soto, en la cual, entre otras cosas, se nombró al Lic. Corretjer Piquer como defensor judicial. Además, la Procuradora Especial de Relaciones de Familia, -Hon. María C. Dávila Lugo-, trajo ante la atención del tribunal el caso KAC-1999-0779 de la sala 603 (incumplimiento de contrato), y solicitó la consolidación del mismo con el caso que nos ocupa. La representación legal del albacea se opuso a la consolidación solicitada. El foro recurrido, luego de ponderar la solicitud de consolidación, declaró no ha lugar la misma por prematura. ██

El 8 de diciembre de 2000, se presentó una nueva Moción Solicitando Prórroga del Plazo del Albaceazgo. ██ Asimismo, el 6 de diciembre de 2000, se notificó al tribunal de instancia la formación del inventario de los bienes pertenecientes a la sucesión del finado Joseph F. Unanue. ██ El 12 de diciembre de 2000, se emitió una *Resolución y Orden* mediante la cual se confirmó el nombramiento efectuado en corte abierta del Lic. Corretejer Piquer como defensor judicial de las menores Unanue. ██ Asimismo, el Tribunal de Primera Instancia dispuso que *"[c]oincidimos con el planteamiento del peticionario de que el Civil Número KAC 99-0779 (603), Joseph A. Unanue Casal v. Isabel M. Banuchi García debe ser referido a la atención del Hon. Luis Pérez Caraballo,*

*quien ha estado activamente involucrado en gran parte de los incidentes procesales en ese caso, particularmente en los relacionados con la moción de sentencia sumaria del peticionario, la cual está pendiente de adjudicación. Entendemos que de esta forma se propiciaría una resolución eficiente y efectiva del caso, tanto para las partes involucradas como para el tribunal, lo cual resultaría en beneficio de las menores Unanue Banuchi." Resolución y Orden*, pág. 2, folio núm. 201 en Apéndice de autos.

El 16 de enero de 2001, el ·tribunal apelado concedió la prórroga del albaceazgo. ■■■ Luego de la presentación de varios escritos, el 7 de mayo de 2002, se celebró una conferencia sobre el estado del caso. En la misma, los abogados de la Interventora señalaron al tribunal que el magistrado de la sala 603 había ordenado la consolidación del caso referente al incumplimiento de contrato con el caso de autos, el concerniente a Cartas Testamentarias. No empece ello, el foro de instancia, por voz del Hon. Carrasquillo Soto, reafirmó que no procedía la consolidación de los casos por tener controversias distintas. Además, concedió el término de cuarenta (40) días para la culminación del proceso de inventario. En adición, en corte abierta concedió la prórroga solicitada al albaceazgo. ■■■ Señaló además, una Conferencia con Antelación al Juicio para el 12 de julio de 2002. ■■■

Así las cosas, el 2 de julio de 2002, el Tribunal de Primera Instancia emitió una *Resolución*, por la cual indicó lo siguiente, a saber:

*"EL (sic) presente caso data del año 1999, convirtiéndose en uno contencioso y voluminoso. Se refiere el mismo a la consideración de la Hon. Milagros Rivera Guadarrama, Juez Administradora de lo civil, para la reasignación del mismo a su sala de origen. Se deja sin efecto señalamiento del 12 de julio de 2002."* (Enfasis suplido). Véase, folio núm. 223 en Apéndice de autos.

El 21 de agosto de 2002, la Juez Subadministradora ordenó a la Secretaría la reasignación del caso de autos (K JV99-0071) a su sala de origen, la sala 508. ■■■ Con fecha de 16 de diciembre de 2002, la Interventora presentó una *Moción de Carácter Urgente Solicitando se Adelante Dinero con Cargo a Participación y Reiterando Solicitud de Fijación de Alimentos a Favor de Menores.* ■■■ En tanto, el 3 de febrero de 2003, el albacea presentó una Réplica a la *"Moción de la Interventora Solicitando Adelanto y Fijación de 'Alimentos'."* ■■■ Mientras, con fecha de 4 de febrero de 2003, se presentó una moción por parte del Defensor Judicial en torno a la solicitud de adelanto y fijación de pensión alimentaria de la Interventora. ■■■

El 6 de febrero de 2003, se presentó una nueva notificación sobre formación de inventario. ■■■Asimismo, el 13 de marzo de 2003 se presentó una *Moción Urgente del defensor judicial para que se Determine Obligación Alimentaria y Solicitud por Nombramiento de Comisionado –R 41.* ■■■ Posterior a ello, el 14 de marzo de 2003 se emitió una Orden Administrativa por la cual se ordenó la reasignación del caso de autos a la sala sobre asuntos de jurisdicción voluntaria, sala 604. ■■■ El 20 de marzo de 2003, se presentó una moción del albacea en torno a la moción del defensor judicial sobre la obligación de alimentos. ■■■

En esta etapa de los procedimientos, el 27 de marzo de 2003, se emitió la Resolución apelada ■■■ por el foro de instancia. En la misma, el tribunal, entre otras cosas, ordenó *"...el archivo del caso de autos, sin perjuicio, en cuanto a controversias de las disposiciones de Cartas Testamentarias y se ordena a las partes radicar caso independiente de división de herencia."* Véase, *Resolución*, folio núm. 319 en Apéndice de autos. La referida Resolución fue notificada el 2 de abril del año en curso. Asimismo, el 3 de abril de 2003, la magistrado de la sala 604 emitió una Orden afirmando su Resolución del 27 de marzo de 2003. ■■■

El 22 de abril de 2003, el albacea presentó una Moción de Reconsideración, a la cual se unió el Defensor Judicial, así como la Interventora. ■■■ Así las cosas, el 2 de mayo de 2003, las partes envueltas presentaron ante nos un recurso de *Certiorari*. Este recurso fue designado como el KLCE-2003-00585. En tanto, el 8 de mayo de 2003, el Tribunal de Primera Instancia declaró sin lugar la moción de reconsideración presentada por

el albacea. ■■■ En igual fecha, el tribunal apelado declaró sin lugar la solicitud del Defensor Judicial a los efectos de unirse a la aludida moción de reconsideración. ■■■ Como fundamento, el tribunal señaló que las Cartas Testamentarias ya habían sido concedidas. Ambas resoluciones se notificaron el 13 de mayo de 2003.

Habida cuenta de ello, el 22 de mayo de 2003, las partes envueltas presentaron una Apelación ante nos. Así, pues, en el recurso apelativo KLAN-2003-00574, los apelantes señalan la comisión del siguiente error por el Tribunal de Primera Instancia:

*"Erró el honorable Tribunal de Primera Instancia, como cuestión de derecho, al dictar ordenar el archivo del presente caso y la presentación de una acción separada de división de herencia."* ■■■

El 22 de mayo de 2003, las partes apelantes -el albacea, la Interventora y el Defensor Judicial-, presentaron una *Moción de Consolidación* en torno al recurso KLCE-2003-00585 y el KLAN-2003-00574. Ello, pues la apelación presentada solicita idéntico remedio, así como se refiere a los mismos hechos, que aquellos contenidos en el caso KLCE-2003-00585. Además, el 22 de mayo de 2003 presentaron una *Moción Explicativa de Presentación de Escrito de Apelación y Solicitando Auxilio en torno a Resoluciones del Tribunal de Primera Instancia del 8 de mayo de 2003.* ■■■

El 2 de junio de 2003, los apelantes presentaron una *Moción Informativa en torno a Cumplimiento con Resoluciones del Tribunal de Primera Instancia del 8 de mayo de 2003.* El 3 de junio de 2003, emitimos *Resolución* por la cual ordenamos la consolidación de los casos KLCE-2003-00585 y KLAN-2003-00574. ■■■ El 6 de junio de 2003, mediante *Resolución,* concedimos a los apelantes diez (10) días para clarificar la pertinencia de los ciento tres (103) folios que acompañó a su *Moción Informativa en torno a Cumplimiento con Resoluciones del Tribunal de Primera Instancia del 8 de mayo de 2003*, del 2 de junio de 2003, así como la omisión de un escrito al cual hizo referencia en el escrito señalado.

El 17 de junio de 2003, el albacea presentó *"Escrito Aclaratorio en Cumplimiento de Orden"*.

## II

El artículo 820 del Código Civil de Puerto Rico, según enmendado, define al albaceazgo como un *"...cargo voluntario, y se entenderá aceptado por el nombrado para desempeñarlo si no se excusa dentro de los seis días siguientes a aquél en que tenga noticia de su nombramiento..."*. 31 L.P.R.A. sec. 2517. Asimismo, y respecto a la capacidad de esta figura, el Código Civil expone que *"[l]os albaceas tendrán todas las facultades que expresamente les haya conferido el testador, y no sean contrarias a las leyes."* 31 L.P.R.A. sec. 2520; *Pino Development Corp. v. Registrador,* 133 D.P.R. 373 (1993); *Paine v. Srio. de Hacienda*, 85 D.P.R. 817 (1962).

Predicado en ello, el art. 597 del Código de Enjuiciamiento Civil estipula el procedimiento a seguir para la aceptación del cargo de albacea, así como la expedición de las cartas testamentarias. *"Todo albacea que acepte el nombramiento hecho a su favor en un testamento, deberá entregar al funcionario en cuya oficina se halla protocolado el testamento, una aceptación del cargo por escrito, acompañada de un juramento, también por escrito, comprometiéndose a cumplir, del mejor modo que le fuere dable, sus obligaciones como albacea, sin lo cual no podrá hacerse cargo de los bienes del finado...."*. 32 L.P.R.A. sec. 2571.

Posterior a ello, el albacea podrá acudir ante la sala del Tribunal de Primera Instancia correspondiente al último lugar de residencia del finado, y dentro de un procedimiento *Ex parte* solicitar la expedición de las cartas. En consecuencia, el tribunal, al recibir prueba, *"...mediante la presentación de una certificación del notario u otro funcionario competente, en que conste haberse archivado dicha aceptación y juramento oficial, expedirá cartas testamentarias a favor del albacea, las cuales constituirán prueba de su autoridad...."*. Art. 597, *supra*.

En suma, para que proceda la expedición de las cartas testamentarias, el albacea tendrá que cumplir con las disposiciones de aceptación según preceptuadas en el Código de Enjuiciamiento Civil y presentar certificación de ello ante el tribunal.

El Tribunal Supremo de Puerto Rico ha expresado que el procedimiento especial de partición y división de herencia es uno de jurisdicción voluntaria. Conforme lo señaláramos, este procedimiento se inicia mediante una solicitud *Ex parte* y no se considera uno de carácter contencioso. *Batiz v. Tribunal Superior*, 104 D.P.R. 41 (1975). No obstante ello, el Tribunal Supremo señaló que estos procedimientos especiales no se han de limitar necesariamente a la comparecencia de una sola parte.

*"...Por el contrario, con frecuencia sucede que dentro de un procedimiento de jurisdicción voluntaria comparecen al tribunal varias partes en defensa de intereses completamente opuestos. Cuando así ocurre...se establece una genuina controversia a ser adjudicada por un tribunal de instancia mediante un trámite dotado de múltiples características análogas a las de un juicio contencioso o plenario. Véanse Mercado v. Mercado, 60 D.P.R. 38, 62 (1946); Rivera v. Corte, 68 D.P.R. 673, 676 (1948)."* Bastardillas y énfasis nuestro. *Batiz v. Tribunal Superior, supra*, a la pág. 45; *García v. Sucn. Anselmo García Sorí*, **2001 J.T.S. 24.** ■

Por otro lado, es axioma judicial que las Reglas de Procedimiento Civil se habrán de interpretar *"...de modo que garanticen una solución justa, rápida y económica de todo procedimiento."* 32 L.P.R.A. Ap. III, R. 1; *Caro Ortiz v. Cardona Rivera*, **2003 J.T.S. 13**; *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 D.P.R. 170 (1992); *Lluch v. España Service Sta.*, 117 D.P.R. 729 (1986); *Batiz v. Tribunal Superior, supra*. Lo anterior constituye un principio de Derecho, cardinal a los casos ante los tribunales.

Por su parte, el Tribunal Supremo de Puerto Rico, al referirse a la discreción, ha señalado que ésta encarna, *"...tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. En el ámbito judicial, sin embargo, el mencionado concepto "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho...".* (Énfasis suplido.) *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964); *Pueblo v. Ortega Santiago*, 125 D.P.R. 203 (1990), a la pág. 211; *Zorniak Air Servs. v. Cessna Aircraft Co., supra*.

Además, se ha manifestado que al momento de interpretar la discreción según ejercida por los magistrados, se ha de tomar en consideración que *"...el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad...".* (Énfasis suplido). *Pueblo v. Ortega Santiago, supra*, a la pág. 211. Véase además *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 D.P.R. 651 (1997).

Analizada la controversia bajo el crisol doctrinario previamente esbozado, nos encontramos en posición de resolver. Así lo hacemos.

### III
Los apelantes han fraccionado la discusión de su señalamiento de error. No obstante ello, habremos de circunscribirnos a discutir lo relacionado a la Resolución apelada, decretando el archivo del caso de autos. Veamos.

Como señaláramos, el tracto procesal del caso de autos es fiel representación de la etapa avanzada en la cual se hallaba el caso en el foro de instancia. Del análisis más breve al expediente ante nos, se puede colegir la diligencia e interés de las partes concernidas en lograr la disposición del mismo. Numerosos escritos que forman parte del expediente, así como la celebración de al menos tres (3) conferencias ante el tribunal, evidencian que no nos enfrentamos a una causa de novel o recién comienzo. El caso de marras tuvo su inicio hace más de cuatro (4) años y todavía recorre las sendas del sistema judicial. Resulta meridianamente claro que el archivo del mismo en esta etapa de los procedimientos derrotaría los preceptos más elementales de la justicia.

Como dijéramos, el presente caso comenzó con la solicitud y correspondiente expedición de Cartas Testamentarias. Al igual que lo ocurrido en *Batiz v. Tribunal Superior, supra,* con el aval del Tribunal, paulatinamente se fueron desarrollando los procedimientos a uno de división y partición de herencia. Es evidente que la acción de autos ha resultado en una de mayor complejidad que la que caracteriza a los procedimientos de jurisdicción voluntaria. No empece, el Tribunal Supremo de Puerto Rico ha precisado, como dijéramos, que cabe la posibilidad de que en ocasiones un caso de jurisdicción voluntaria adquiera una tonalidad contenciosa, y *"...[p]or ello,..., al adquirir carácter contencioso un trámite que en su principio tuvo carácter de juicio de jurisdicción voluntaria, pasa dicha acción al ámbito de los procedimientos de naturaleza civil,..., siempre que al así hacerlo no se contravengan ni la letra ni el espíritu de las normas procesales estatuidas en el Código de Enjuiciamiento Civil para el procedimiento especial de que se trate...". Batiz v. Tribunal Superior, supra,* a la pág. 47. Así pues, hallamos que indudablemente el derecho provee para que casos de naturaleza voluntaria puedan convertirse en unos contenciosos, y así ser atendidos hasta su final disposición.

En adición a lo anterior, destacamos que la justicia se ha de impartir, tomando en consideración que las partes envueltas esperan la atención a su reclamo de la manera más ágil y económica. No podemos permitir que este principio divague tal letra muerta, sino que mediante el empeño y el esfuerzo se ha de avivar el mismo, bajo la sana discreción y en consideración de los mejores intereses de las partes.

Como indicara el Tribunal Supremo, *"[e]n el trámite de los casos en los tribunales, ya sea que éstos se ventilen por la vía ordinaria o por algún procedimiento especial como el sumario establecido por la Ley Núm. 2, supra,* **hay que tener presente que el propósito cardinal de las normas procesales, bajo cualesquiera circunstancias, es lograr resolver las controversias que se presentan ante el sistema judicial de forma justa, rápida y económica.** *Los tribunales de instancia tienen amplia flexibilidad y discreción para, dentro del marco que proveen las Reglas de Procedimiento Civil y los procedimientos especiales, lograr esta meta al resolver los casos ante su consideración."* Bastardillas y énfasis nuestro. *Rivera v. Insular Wire Products Corp.,* 140 D.P.R. 912 (1996), a la pág. 928.

Así, pues, estamos compelidos a determinar que en el caso ante nos, incidió la magistrado de instancia al ordenar el archivo del caso sin cavilar ponderadamente el efecto de tan dramática decisión para los intereses de las partes concernidas. Su actuación constituyó un abuso de discreción. *Meléndez v. Caribbean Intnl. News,* **2000 J.T.S. 108**; *Zorniak Air Servs. v. Cessna Aircraft Co., supra.* Huelga decir, ante ello, que *"...[d]iscreción es, pues, una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera, cuando los elementos coactivos de una Ley resultan superiores a los elementos reparadores. La discreción permite salirse un tanto de la Ley en busca de la justicia." Pueblo v. Sánchez González,* 90 D.P.R. 197 (1964), a la pág. 200. Se cometió el error señalado.

Por último, el planteamiento en torno a la procedencia de la inhibición de la magistrado suscriptora de la Resolución de autos, habrá de ser presentado, conforme a los Cánones de Etica Profesional, ante el Tribunal de Primera Instancia. En estos momentos resulta prematuro.

## IV

Por los fundamentos anteriormente expresados, se revoca el dictamen de autos, y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

1. Véase, folio núm. 1 en Apéndice de autos.

2. Véase, folio núm. 72 en Apéndice de autos.

3. Véase, folio núm. 75 en Apéndice de autos.

4. Véase, folio núm. 156 en Apéndice de autos.

5. Véase, folio núm. 160 en Apéndice de autos.

6. Véase, folio núm. 167 en Apéndice de autos.

7. Véase, folio núm. 172 en Apéndice de autos.

8. Véase, folio núm. 176 en Apéndice de autos.

9. Véase, folio núm. 179 en Apéndice de autos.

10. Véase, folio núm. 200 en Apéndice de autos.

11. Véase, folio núm. 202 en Apéndice de autos.

12. El 2 de julio de 2002, el albacea presentó una Moción en Cumplimiento de Orden Sobre el Término de Albaceazgo.

13. Véase, folio núm. 214 en Apéndice de autos.

14. Véase, folio núm. 224 en Apéndice de autos.

15. Véase, folio núm. 227 en Apéndice de autos.

16. Véase, folio núm. 231 en Apéndice de autos.

17. Véase, folio núm. 248 en Apéndice de autos.

18. Véase, folio núm. 266 en Apéndice de autos.

19. Véase, folio núm. 281 en Apéndice de autos.

20. Véase, folio núm. 298 en Apéndice de autos.

21. Véase, folio núm. 300 en Apéndice de autos.

22. Por voz de la Hon. Awilda Irizarry Pardo.

23. Véase, folio núm. 321 en Apéndice de autos.

24. El 1ro. de mayo de 2003, el Tribunal de Primera Instancia, esta vez por voz del Hon. Heriberto Sepúlveda, acogió la solicitud de la Interventora para unirse a la moción de reconsideración. Véanse: folios núms. 324, 333, 335, 341.

25. Véase, folio núm. 344 en Apéndice de autos.

26. Véase, folio núm. 349 en Apéndice de autos.

**27.** El error señalado es discutido por los apelantes en dos partes:

"*A) La Hon. Awilda Irizarry Pardo debió inhibirse sin tomar determinación alguna en el caso.*

*B) No existe razón en derecho para ordenar el archivo del presente caso.*"

**28.** En idéntica fecha, presentaron una *Moción Solicitando Auxilio en torno a Resoluciones del Tribunal de Primera Instancia del 8 de mayo de 2003.*

**29.** Los recursos fueron consolidados, en aras de la economía procesal. *Hosp. San Fco. Inc. v. Sria. de Salud,* 144 D.P.R. 586 (1997).

**30.** Opinión de conformidad emitida por el Juez Asociado Señor Hernández Denton a la que se unen el Juez Presidente Señor Andréu García y el Juez Asociado Señor Corrada del Río.